## JUNOD et al. v. CHICAGO & N. W. RY. CO.

*(Circuit Court, S. D. Iowa. June 13, 1891.)*

1. INTERSTATE COMMERCE ACT—LONG AND SHORT HAUL CLAUSE.

The interstate commerce law (Act Cong. Feb. 1887,) provides (section 4) that a common carrier shall not charge a greater compensation for the transportation of a like kind of property under substantially similar circumstances, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included in the longer distance. *Held* that, in an action for breach of this section, the fact that the rate for the longer distance was established jointly be-, tween defendant and connecting railroads, does not exempt defendant from liability.

2. SAME—REDUCTION TO MEET COMPETITION.

Evidence that, in the state to which the longer haul extended, "cut rates" had been instituted by reason of competition between defendant and other companies, is inadmissible unless a ground has been laid therefor in the pleadings.

3. SAME—SIMILARITY OF SERVICES.

In order to entitle plaintiff to recover it must appear that the higher rate which he has been charged for the shorter distance was for like services and under sim ilar circumstances.

4. SAME—MISSTATEMENT OF BILL OF LADING.

The fact that the freight for the longer distance was billed to some point short of the destination of the shorter haul will not bar plaintiff's recovery, when such freight was intended to be, and was in fact, taken to the destination of the shorter haul.

5. SAME—MEASURE OF DAMAGES.

Where plaintiff is entitled to the same rate for the shorter haul as is afforded other shippers for the longer haul, the measure of damages is the difference between the amounts paid by each for the like service.

6. SAME—PROVINCE OF JURY.

It is for the jury to determine whether or not they will add interest to the amount of the damages; but, if awarded, it must be estimated from the date of the last shipment.

At Law. Action by H. A. Junod and another against the Chicago & Northwestern Railway Company.

*C. C. & C. L. Nourse,* for plaintiffs.

*N. M. Hubbard,* for defendant.

SHIRAS, J., *(charging jury.)* The issues presented by the case on trial before you arise under the provisions of an act of congress passed in February, 1887, and commonly known as the "Interstate Commerce Law." As you are doubtless all aware, the congress of the United States, for the purpose of regulating the business carried on by common carriers of persons or property by means of railways, or by a combination of railway and water travel, where the same is under the control of one common carrier, has passed this act, which regulates, in certain particulars, the carrying on of the passenger and freight business that exists between the different states and territories of the United States. The law, by its provisions, as I have already stated to you, applies to this interstate commerce,—that is, commerce that is carried on between the states and territories of the United States. Section 2 of this act in substance prohibits the charging or collecting from any person or persons a greater or less compensation for services rendered in the transportation of passengers or property than is charged or collected from others for the transportation of similar property under substantially similar circumstances. Section

3 of the act makes it unlawful for any common carrier to make or give any undue or unreasonable preference or advantage to any person, company, firm, corporation, or locality over others, or to any particular description of traffic. Section 4 of the act in substance makes it unlawful for any common carrier to charge or receive any greater compensation in the aggregate for the transportation of a like kind of property, under substantially similar circumstances, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included in the longer distance; it being, however, provided that, upon application to the commission appointed under the provisions of this act, such commission may authorize the carrier to charge less for the longer than for the shorter distance.

It appears from the pleadings in this case that the plaintiffs were shippers engaged in business in Carroll, in the state of Iowa, a point upon the main line of the railway owned and operated by the Chicago & Northwestern Railway Company, the defendant in the present case. In the first count of the petition it is charged, in effect, that between the 30th day of December, 1887, and the 1st day of February, 1888, the defendant company had in force and effect a tariff that permitted the shipping of corn and oats from Blair and other points in Nebraska, over the line of defendant's road, through Iowa, to Chicago, Ill., at the rate of 11 cents per 100 pounds; that between the dates aforesaid the plaintiffs had, for shipment east, corn and oats to the amount of 338,030 pounds; that the defendant company did not post up in its different stations upon its line in Iowa the tariff aforesaid, and that it refused to put the same in force at all points in Iowa; that plaintiffs were deprived of this cheaper rate on corn and oats from Carroll, Iowa, but were compelled to pay, to ship the same over defendant's road, the rate of 19 cents per 100 pounds; and plaintiffs claim that they have been damaged by reason of the unlawful acts of the defendant in the difference they were required to pay over the rate for which the defendant company was transporting grain from Nebraska to Rochelle, Ill., being the rate of 11 cents per 100 pounds. In the second count of the petition it is substantially charged that between the 17th of February, 1888, and the 1st of March, 1888, inclusive, the defendant company had in force a tariff rate for which it carried corn and oats from Blair and other points in Nebraska, over its line in Iowa, passing through Carroll, Iowa, to Chicago, Ill., and thence to New York, at the rate of 36½ cents per 100 pounds; that the plaintiffs, between the dates aforesaid, had at Carroll, in the state of Iowa, for shipment east, 64,250 pounds of grain; that the defendant company demanded for shipping grain to New York from Carroll, Iowa, the sum of 46½ cents, or 10 cents more per 100 pounds than it was then charging for the like service to shippers from Blair and other points in Nebraska; that by reason of these facts the plaintiffs were compelled to ship the grain aforesaid to Chicago, Ill., paying therefor at the rate of 19 cents per 100 pounds; and by reason of these facts the plaintiffs are seeking to recover the damages alleged against the defendant company.

There has been evidence introduced in this case tending to show that there was a tariff rate in force from Blair and other points in Nebraska to Chicago and points in Illinois in the neighborhood of Chicago, and other points east, under which, substantially, parties in Nebraska were enabled to ship grain to Chicago, Ill., at the rate of 11 cents per 100 pounds. There is no evidence showing that this tariff or this rate was established at Carroll, Iowa, at that time, or between the dates named in the first count of the petition; nor does it appear that the plaintiffs were enabled to obtain the advantages of that rate of 11 cents per 100 pounds in making shipments from Carroll, Iowa, to Chicago, Ill. It is claimed on behalf of the defendant that this tariff rate, if such tariff rate was in operation, was put into effect by a joint arrangement between the Fremont, Elkhorn & Missouri Valley Railroad Company and the Chicago & Northwestern Railway Company, and perhaps other roads, and that the Chicago & Northwestern Railway Company is, therefore, not to be held liable to shippers in Iowa for the effect of this tariff rate thus put in force in Nebraska. As I understand the law, and I so charge you for the purposes of this case, it makes no difference whether the tariff was issued by the defendant alone or jointly between the defendant company and other connecting lines of road, if in fact it appears that the defendant company, as one of the companies, aided to put in force this tariff rate. In other words, if the evidence satisfies you that the Chicago & Northwestern Railway Company, by entering into a mutual arrangement with the Fremont, Elkhorn & Missouri Valley Railroad Company and the Sioux City & Pacific Railroad Company, or other connecting lines of railway, did in fact put in force a tariff, such that by its terms the Chicago & Northwestern Railway Company did engage in the transportation of grain shipped from Nebraska, and that the rate charged and received under that tariff by the Chicago & Northwestern Railway Company for shipping this grain from Blair, or other points in Nebraska, to Chicago, Ill., was a lower rate—for instance, 11 cents per 100 pounds— than the rate the Chicago & Northwestern Railway Company was charging for the like services, for the shipping of like produce, corn and oats, from points upon its line through which these shipments from Blair, Neb., passed in going to Chicago and other eastern points, that, in my judgment, would make the Chicago & Northwestern Railway Company responsible for the effect of this joint tariff which it had aided in making from points in Nebraska. In other words, the company, in making this joint rate, is charged with the duty of observing the provisions of the interstate commerce law, and it cannot, by entering into a joint rate, so arrange tariffs that it shall unjustly or unduly discriminate against its patrons in Iowa, in favor of those who make shipments from Nebraska; and the mere fact that this effect is brought about by a joint rate does not, in my judgment, enable the defendant to escape from the consequences of having aided in establishing the rate by a joint arrangement with the lines in Nebraska.

The question, therefore, for determination is this: Are you satisfied from the evidence in the case that the defendant railway company did

in fact, between the dates named, have a tariff rate in operation, either its own tariff or by arrangements made with other roads, whereby it undertook the transportation of grain and corn from Blair and other points in Nebraska, to Chicago, Ill., or other eastern points, at a rate less than it was charging for the like service to the shippers at Carroll, Iowa, that being a point upon its main line through which these shipments were made from Nebraska, to points east? The duty and obligation placed by the law upon the railway company is that it shall not give any undue preference or advantage to any person or persons; that it shall not give undue preference to one locality over other localities; that it shall not discriminate between the rates that are furnished Nebraska shippers and the rates from Iowa points. Of course, when we speak of undue preference or undue discriminations, these questions must be viewed with reference to all the circumstances that surround the transaction. It must appear that it is for the like services, and under similar circumstances, or otherwise the mere difference in the rate would not necessarily show that an undue preference was given. Assuming that you will find under the evidence that there was a tariff rate put in operation and effect by the defendant railway company from Blair and other points in Nebraska, by which corn and oats were in fact shipped at a rate substantially of 11 cents from Blair,—for instance, to Chicago, Ill.,—is there or is there not anything shown in the case that would justify you in finding that there was any circumstance or circumstances that would justify the company in charging the increased rate for doing the same kind of business,—that is, shipping corn and oats,—at the same time, from Carroll, Iowa, to Chicago, Ill., than for parties shipping from Blair and other points in Nebraska? Now, as I understand it, Carroll, Iowa, is a point nearer to Chicago, Ill., and other eastern points, than is Blair, Neb.; the kind of property forwarded is of the same nature; the distance that is passed over in going from Carroll, Iowa, is less than the distance that would be passed over in going from Blair or other points in Nebraska to Chicago, Ill., or other eastern points. Is there, therefore, anything shown in the evidence that would show such a dissimilarity in the circumstances, or in the work done, or in the property that was being forwarded, that would authorize you in finding that the company was justified in charging the larger rate for making transportation from Carroll, Iowa,—the shorter distance,—to Chicago, Ill., and other eastern points, than the rates charged from Blair and other points in Nebraska? If there is no evidence to show any dissimilarity in these particulars, then, of course, there is nothing that would justify you in finding that the company was excused from the effect of this larger rate that was put in force upon the grain or property forwarded from Carroll, Iowa, as compared with that charged for grain forwarded from Blair and other points in Nebraska.

During the progress of the trial, on behalf of the defendant it was sought to introduce evidence tending to show that there had been what is called "cut rates" instituted in Nebraska, by reason of the competition that it was claimed existed at the time between these companies and

othe companies that were seeking to obtain business in that state; but the court, upon objection, refused to admit this evidence, upon the ground that there was no sufficient ground laid in the pleadings to authorize the plea to be admitted. That question, consequently, is not submitted to you in this case, and you cannot take into account any testimony on that subject. In case the court is in error in this particular, the remedy must be by other proceedings which are open to the defendant. So far as the evidence is before you, there is no evidence of that nature for you to consider. The question for you to consider is: Is there any evidence tending to show a dissimilarity in the property forwarded, in the relation of the different points,—that is, the distances between these different points,—and all matters of that kind that have been introduced in evidence? It does not seem to me that there is anything in the evidence that would justify you in finding that the company was justified in putting in force this larger rate. It is for you, however, to determine that question under the evidence. If you find, then, that there was any dissimilarity in the circumstances that would justify this increased rate from Carroll, Iowa, to Chicago, Ill., then the defendant company has not been guilty of violating the law.

You will notice that I have spoken all the time of the tariff rates between these different points in Nebraska and Carroll, Iowa, to Chicago, Ill. There was evidence tending to show that freight was forwarded or billed to Rochelle and Turner Junction in Illinois, points at some distance from the city of Chicago. There was also evidence introduced tending to show that these were unimportant points upon the defendant's railway line; that the company did not have any elevators at those places; and that these shipments, though technically billed to those points, were in fact shipments that the railway company took through to Chicago, Ill., if that was their destination, or, if they were shipping to points further east, delivered them at Chicago to connecting lines of road. If the evidence satisfies you that, while issuing a tariff or taking consignments of freight to be delivered technically at Turner or Rochelle, Ill., in fact they were intended to be shipped through to Chicago, Ill., that would justify you in finding that in fact the tariff put in operation was for shipments from those western points to the city of Chicago, and it is upon that basis that these instructions are given you. Therefore, if, under the evidence, you find that in fact the railway company, during the time named, was shipping grain under the tariff arrangement from Blair and other points in Nebraska for the rate aforesaid of substantially 11 cents to Chicago, Ill., and the company at the same time was charging shippers at Carroll, Iowa, including the plaintiffs, for the same service, for transporting the same kind of grain to the city of Chicago, a rate greater than 11 cents, the question is whether or no that is or is not a violation of the interstate commerce law. I may say that, by the provisions of the interstate commerce law, it is provided that parties who may be unjustly discriminated against, and who may be damaged thereby, are entitled to sue and to recover the money damages caused to them by the violation of the act; and it is under this provision of the statute that

this action is brought. As I have already stated to you, gentlemen, the interstate commerce law makes it the duty of carriers engaged in this business of transporting persons and property by means of railways between the different states of the Union not to give any undue preference to one locality over another locality, to one person or persons over others, not to make an unjust discrimination; and, unless authorized by the board of commissioners appointed under the law, they are not to charge or receive for the like service, in the same direction, and over the same line, any greater sum for a shorter haul than they charge for the longer haul. If, therefore, the evidence in this case satisfies you, gentlemen, that the defendant in this case, at the time named, was, by the tariff it had put in force, forwarding grain from Blair and other points in Nebraska to Chicago and other eastern points at the rate of 11 cents per 100 pounds, this grain being forwarded over and along its line passing through Carroll, Iowa, and at the same time it was charging plaintiffs, for making like shipments of a like character of grain, the rate of 19 cents per 100 pounds for forwarding the same from Carroll, Iowa, to Chicago, Ill., and other eastern points, that would justify you, gentlemen, in finding that the defendant railway company by the doing of that was giving undue preference to Nebraska localities and Nebraska shippers over the locality of Carroll, Iowa, and the shippers at Carroll, Iowa, including the plaintiffs. And if the evidence satisfies you that that was in fact done, and that in fact the plaintiffs were compelled to pay for the grain and corn shipped by them at the rate of 19 cents per 100 pounds for such shipments, this would justify you in finding defendant had violated the law, and caused damages to plaintiffs. Of course, if the evidence fails to satisfy you of these facts that have been indicated, your verdict will be for defendant. If, however, you find upon these issues for the plaintiff, then the question arises as to the measure of damages.

If a party, under the law, is entitled to have the same rate,—that is, if the shipper at Carroll, Iowa, was entitled to have the same rate charged him for the forwarding of his property from Carroll, Iowa, to Chicago, Ill., as the shipper at Nebraska, and he was charged more,—the damage to him is the difference between the rates that he was thus called upon to pay and the lesser rate charged the Nebraska shipper. If the tariff rate from Blair and other points in Nebraska was 11 cents, and the plaintiffs had to pay 19 cents; if, under the law, as I have instructed you, the duty and obligation was on the railway company to give the benefit to the shippers at Carroll, Iowa, of the same rate,—of an equal rate with that given to the shippers from Blair and other points in Nebraska,—you see the damage to the parties who have been compelled to pay this higher rate is the difference between that and the lesser rate. If, for every 100 pounds they were compelled to pay 8 cents more, that is the damage per 100 pounds of grain shipped that is caused them. In estimating the total amount of damage, take the total amount of the shipments,—the total number of hundred pounds,—and then estimate that at the difference you find between the rate per 100 pounds you find estab-

lished at Nebraska points and the rate at Carroll, Iowa, and that will give
the amount of the damage. Upon the claim made in the second count of
the petition, apply the same rule of damages. If you find it established
by the evidence that defendant had in force from Blair and other points
in Nebraska a tariff for the shipment of grain to eastern points on the
basis of a through rate to New York, and the grain was shipped at such
rate; that the plaintiffs made shipments to Chicago because they could not
get the cheaper rate over defendant's road to ship through to New York,
—then the rule as to the measure of damages is just the same as in the
first count. Take the rate actually paid from Carroll, Iowa, to Chicago,
Ill., and then the difference between that and the rates at which the de-
fendant was shipping corn and oats from points in Nebraska, and the
difference between the tariffs is the damage per 100 pounds to the plaintiffs.
Then ascertain the number of hundred pounds in the shipments, and
by multiplying arrive at the total damages. It is also within your prov
ince, gentlemen, to add interest at the rate of 6 per cent. per annum to
the amount that you find was the damages caused the plaintiffs. It is
a matter which falls within your province to determine whether you will
or will not add interest to that amount.

You understand, gentlemen, that there is no dispute, as a matter of
fact, between the parties as to the amount of grain shipped, nor the
times, nor the prices paid therefor. I will also say, gentlemen, in or-
der that the record may be made clear, that it is set up as a defense in this
case that the parties in this suit sought a remedy under the interstate
commerce law, by proceedings instituted before the board of railway
commissioners appointed by the law. There is a provision of the law
that gives the right or option to parties who claim they have been dam-
aged by some act of a railway company contrary to the provisions of the
law, by which they may apply to the board of commissioners and obtain
the relief that that board can give them, or they may sue in a court of
law, and obtain the damages suffered. By the law it is provided that,
while the parties thus have the option to pursue their remedy either be-
fore the commissioners or in the courts of law, they must take one remedy
or the other. If they seek their remedy by one course, then they can-
not have the other. This provision was evidently intended for the bene-
fit of the railways, to prevent railway companies from being harassed
by cumulative proceedings against them, both in the courts and before
the commissioners. It is claimed that the plaintiffs had sought their
remedy by proceedings before the board of commissioners, and that that
bars them from maintaining this suit. It is sufficient to say, gentlemen,
for the purposes of your action in the matter, that the court rules against
the defense that is claimed by the defendant. Not that it is not the law
(possibly it is the law) that, if plaintiffs had submitted their claim in
the proceedings before the commissioners, they would have been pre-
cluded from maintaining this action; but the facts do not show that the
plaintiffs sought that remedy. While there were certain proceedings in-
stituted in the name of an association of which the plaintiffs were mem-
bers, it does not appear that that association submitted to the commis-

sioners the claims of these particular plaintiffs. Though those proceedings might settle the abstract points involved in this case, still, as I view it, the plaintiffs had not submitted their claim, or had not set it out before the board of commissioners for the exercise of their jurisdiction. The facts produced in evidence do not bring them within the provisions of the law, and I charge you, therefore, that you have nothing to do with that branch of the case. The court withdraws that from your consideration. If you decide to give interest, you will estimate it from the date of the last shipment.

Verdict for plaintiffs for $375.75.